UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| STEPHEN WHITE and DEBRA SARNO, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 17-cv-10769-ADB |
| JOSEPH MALDONADO and M&M | * | |
| PRODUCE, INC., | * | |
| | * | |
| Defendants. | * | |
| | * | |

**MEMORANDUM AND ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT AND MOTION TO STRIKE CERTAIN OPINIONS
OF DEFENDANTS' EXPERT**

BURROUGHS, D.J.

Plaintiff Stephen White filed this action in his capacity as the duly appointed

administrator for the estate of Debra Sarno. See [ECF No. 1-2 at 1]. Plaintiff alleges negligence,

gross negligence, and wrongful death, and seeks damages related to pain and suffering and

punitive damages against Defendant Joseph Maldonado in connection with a fatal motor vehicle

accident that involved Mr. Maldonado and Ms. Sarno. [Id. at 1, 4–8]. In addition, Plaintiff seeks

damages related to pain and suffering, punitive damages, and damages related to vicarious

liability from Mr. Maldonado's former employer, M&M Produce, Inc. ("M&M Produce" and,

collectively with Mr. Maldonado, "Defendants"). [Id. at 1, 7–8]. Presently before the Court are

Plaintiff's and Defendants' respective motions for partial summary judgment. [ECF Nos. 74, 78,

82]. Also before the Court is Plaintiff's motion to strike certain opinions of Defendants' expert,

Stephen Benanti. [ECF No. 76]. For the reasons explained herein, Plaintiff's motion for partial

summary judgment on the issue of comparative negligence, [ECF No. 74], is <u>DENIED</u>.

Plaintiff's unopposed motion for partial summary judgment on the issue of liability, [ECF No.

78], is <u>GRANTED</u>.  Defendants' partial motion for summary judgment on the issue of punitive damages, [ECF No. 82], is <u>DENIED</u>.  Plaintiff's motion to strike certain opinions of Defendants' expert, Mr. Benanti, [ECF No. 76], is <u>GRANTED</u> in part and <u>DENIED</u> in part.

## I.    BACKGROUND

### A.    Procedural History

On April 4, 2017, Plaintiff filed this lawsuit in Suffolk Superior Court.  [ECF No. 1-2]. Defendants removed the matter from state court on May 2, 2017, on the basis of diversity jurisdiction because Mr. Maldonado was a resident of Connecticut and M&M Produce had its principal place of business in Connecticut.  [ECF No. 1].  Defendants filed their answer with affirmative defenses on May 9, 2017.  [ECF No. 6].  Following discovery, Plaintiff filed a series of motions on April 30, 2019, including a motion for partial summary judgment on the issue of comparative negligence, [ECF No. 74], a motion to strike certain opinions of Defendants' expert, Mr. Benanti, [ECF No. 76], and a motion for partial summary judgment on the issue of liability, [ECF No. 78].  Defendants filed their oppositions to two of these motions on June 6, 2019, [ECF Nos. 89, 91], but did not oppose Plaintiff's motion for partial summary judgment on the issue of liability, <u>see</u> [ECF No. 86 at 1 n.1].  On May 8, 2019, Defendants filed a motion for partial summary judgment on Plaintiff's claim for punitive damages.  [ECF No. 82].  Plaintiff filed his opposition on May 22, 2019, [ECF Nos. 84, 85], and Defendants filed their reply on June 5, 2019, [ECF No. 88].

### B.    Factual Summary

Except as otherwise noted, the following facts are not in dispute.

On the morning of April 21, 2014, Ms. Sarno was driving a taxicab northbound across the Zakim Bridge when she pulled her vehicle to the right side of the road and came to a stop.  [ECF

No. 75 ¶¶ 1–2; ECF No. 83 ¶¶ 1–2]. There is no breakdown lane on the Zakim Bridge. [ECF No. 75 ¶ 4; ECF No. 89 ¶ 4].[1] Ms. Sarno called the dispatcher at Malden Cab and spoke with Sue Ellen Hyde, telling her that the vehicle had a flat tire. [ECF No. 75 ¶¶ 2–3; ECF No. 89 ¶ 1].[2] Ms. Hyde called a tow truck to assist her. [ECF No. 75 ¶ 3; ECF No. 83 ¶ 18]. Ms. Sarno waited in her vehicle for assistance. See [ECF No. 75 ¶ 6; ECF No. 83 ¶ 14]. Approximately twenty-four vehicles maneuvered past Ms. Sarno's taxicab while she was stopped. [ECF No. 85 ¶ 18; ECF No. 83 ¶ 20].

Mr. Maldonado was also traveling northbound on the Zakim Bridge that morning, driving a truck in the course of his employment with Defendant M&M Produce. [ECF No. 75 ¶ 5; ECF No. 89 ¶ 5]. Mr. Maldonado's truck struck the taxicab in which Ms. Sarno was sitting from the rear, causing it to burst into flames. [ECF No. 75 ¶ 6; ECF No. 89 ¶ 6]. Ms. Sarno died as a result of the collision. [ECF No. 75 ¶ 7; ECF No. 89 ¶ 7].

## II. LEGAL STANDARD

Summary judgment is appropriate where the movant demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003). "A genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. When reviewing the record, the court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable

---

[1] Defendants state that there is a four-foot wide shoulder on the right side of the road. [ECF No. 89 ¶ 4]. Plaintiff has neither disputed nor admitted this statement.

[2] Though it is undisputed that Ms. Sarno told Ms. Hyde that the taxicab had sustained a flat tire, the parties dispute whether the vehicle had, in fact, sustained a flat tire. [ECF No. 89 ¶ 1].

inferences in that party's favor." Id. The First Circuit has noted that this standard "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and material," Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the court may discount "conclusory allegations, improbable inferences, and unsupported speculation," Cochran, 328 F.3d at 6 (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

"To succeed in showing that there is no genuine dispute of material fact," the moving party must point to "specific evidence in the record that would be admissible at trial." Ocasio-Hernandez v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015). "That is, it must 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Id. at 4–5 (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). Once the movant takes the position that the record fails to make out any trial-worthy question of material fact, "it is the burden of the nonmoving party to proffer facts sufficient to rebut the movant's assertions." Nansamba v. No. Shore Med. Ctr., Inc., 727 F.3d 33, 40 (1st Cir. 2013).

## III. DISCUSSION

### A. Comparative Negligence

Plaintiff seeks summary judgment on Defendants' affirmative defense of comparative negligence, claiming that Defendants have failed to provide sufficient evidence of negligence on

the part of Ms. Sarno.  [ECF No. 75 at 7].  In response, Defendants argue that there are issues of material fact regarding whether Ms. Sarno exercised reasonable care when faced with car trouble on the Zakim Bridge or whether she violated a Massachusetts regulation regarding highway safety.  [ECF No. 89 at 1].

        1.      <u>Whether Ms. Sarno Exercised Reasonable Care</u>

Under Massachusetts law, which provides the basis for Defendants' comparative negligence defense, "[t]he burden of alleging and proving negligence which serves to diminish a plaintiff's damages or bar recovery under this section shall be upon the person who seeks to establish such negligence, and the plaintiff shall be presumed to have been in the exercise of due care."  Mass. Gen. Laws ch. 231, § 85.  Defendants therefore bear the burden of proving that Ms. Sarno did not exercise reasonable care and that this alleged lapse resulted, at least in part, in her injuries.  <u>See</u> <u>id.</u>

"The question of comparative negligence, like that of breach of duty, is primarily for the factfinder."  <u>Marquez v. Home Depot USA, Inc.</u>, 154 F. Supp. 2d 152, 156 (D. Mass. 2001) (citing <u>Everett v. Bucky Warren, Inc.</u>, 380 N.E.2d 653 (Mass. 1978)).  The parties dispute several facts that are relevant to Defendants' burden on the issue of comparative negligence.  For example, there are disputed factual issues as to the condition of Ms. Sarno's vehicle.  Plaintiff alleges that Ms. Sarno's vehicle had a flat tire, while Defendants dispute this.  [ECF No. 75 at 2; ECF No. 89 at 2].  Ms. Sarno made a call to her dispatcher, Ms. Hyde, to report a flat tire, [ECF No. 75 at 2], but Defendants state that Ms. Hyde's testimony regarding Ms. Sarno's representations about the condition of the vehicle are hearsay, and note that there is no evidence

of the condition of her vehicle, [ECF No. 89 at 2].[3]  The condition of the vehicle's tires and the

resulting drivability of the car is relevant to the parties' dispute as to whether Ms. Sarno could

have driven to a place of safety, or whether she could have pulled the vehicle closer to the

shoulder of the highway.  [ECF No. 75 at 3–4; ECF No. 89 at 4–5].  The parties also dispute

whether Ms. Sarno should have exited the vehicle while waiting for assistance.  [ECF No. 75 at

4–6; ECF No. 89 at 10–11].  Relatedly, the parties dispute whether, if she had moved the vehicle

or her person to a position of safety, the accident could have been avoided or its severity

minimized.  [ECF No. 75 at 5–6; ECF No. 89 at 4–5].

 2. Alleged Violation of a Statute or Regulation

Defendants also allege that Ms. Sarno violated a Massachusetts highway regulation.

[ECF No. 89 at 7].  The Massachusetts statute governing comparative negligence addresses the

issue of liability when a plaintiff has violated such a regulation:

> The violation of a criminal statute, ordinance or regulation by a plaintiff which
> contributed to said injury, death or damage, shall be considered as evidence of
> negligence of that plaintiff, but the violation of said statute, ordinance or regulation
> shall not as a matter of law and for that reason alone, serve to bar a plaintiff from
> recovery.

Mass. Gen. Laws ch. 231, § 85.  Defendants claim that Ms. Sarno violated the following

regulation:

> Emergency Repair.  **No person shall park a vehicle in any highway except in the
> right-hand lane or shoulder of the highway for the purpose of changing a tire
> or making emergency repairs** unless such vehicle is so damaged or disabled that
> it cannot be moved under its own power.

720 Mass. Code Regs. 9.03(5) (emphasis added); see [ECF No. 89 at 7–10].

The regulation defines "parking" as follows:

---

[3] A Massachusetts State Police Collision Reconstruction Report notes that all four tires of Ms.
Sarno's vehicle were burned in the accident and that "what type of tire failure existed" was
unknown.  [ECF No. 83-4 at 12, 17].

The stopping or standing of a vehicle whether occupied or not, otherwise than temporarily, except that **a vehicle shall not be deemed parked when stopped or standing** for the purpose of and while actually engaged in loading or unloading or in obedience to an officer or traffic control signs or signals, or **while making emergency repairs or, if disabled, while arrangements are being made to move such vehicle**.

720 Mass. Code Regs. 9.01 (emphasis added). The Court finds that, as an initial matter, whether Ms. Sarno was making the repairs herself, or waiting for a tow truck to assist her is irrelevant. The regulation does not specify who must make the relevant repairs in order to fall within the exception: the driver, a passenger, or a third party. See 720 Mass. Code Regs. 9.03(5), 9.01. At issue is whether Ms. Sarno's vehicle had a flat tire that required repair, was disabled such that it could not be moved, or required other emergency repairs such that parking in the right-hand lane of the Zakim Bridge fit within the exception of Sections 9.03(5) and 9.01.

The condition of Ms. Sarno's vehicle is a question of material fact which remains in dispute and must be left to a jury to decide. See Cochran, 328 F.3d at 6 ("A genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way."); Gomez, 670 F.3d at 397 (holding that factual conflicts must be genuine and material). Where, as here, the parties dispute facts that are essential to the claimed defense, summary judgment is not appropriate. See Cochran, 328 F.3d at 6. Accordingly, Plaintiff's motion for summary judgment on the issue of comparative negligence, [ECF No. 74], is DENIED.

### B. Punitive Damages

Defendants seek summary judgment on Plaintiff's request for punitive damages in connection with Plaintiff's wrongful death claim. [ECF Nos. 82, 83]. Individuals found to have violated the Massachusetts wrongful death statute are liable for "punitive damages in an amount of not less than five thousand dollars in such case as the decedent's death was caused by the malicious, willful, wanton or reckless conduct of the defendant or by the gross negligence of the

defendant . . ." Mass. Gen. Laws ch. 229, § 2. Defendants argue that Plaintiff cannot prove Mr. Maldonado's conduct was grossly negligent, willful, wanton, or reckless. [ECF No. 83 at 1]. In response, Plaintiff asserts that there is a question of material fact as to whether Mr. Maldonado failed to avoid hitting Ms. Sarno's vehicle because he was distracted or did not perceive her car in time, which bears on the characterization of his conduct. [ECF No. 85 at 2, 6–8].

"In the context of automobile accidents, while there is no hard and fast rule, the three elements usually taken into consideration [in determining gross negligence] are the speed of the vehicle, the circumstances and conditions at the site of the accident, and the length of any inattentiveness." Peck v. Garfield, 862 F.2d 1, 5–6 (1st Cir. 1988). The parties dispute material facts that would support consideration of these factors, such as the speed at which Mr. Maldonado was traveling and the speed limit in place at the location of the accident. [ECF No. 83 at 13–14; ECF No. 85 at 6].

For example, both parties agree that twenty-four vehicles saw and avoided Ms. Sarno's car before Mr. Maldonado hit it, though the parties dispute the significance of this fact. [ECF No. 83 at 5; ECF No. 85 at 4]. Plaintiff alleges that because twenty-four other vehicles had been able to avoid striking Ms. Sarno's car in the minutes leading up to the accident, Mr. Maldonado was either traveling too fast or was distracted. [ECF No. 85 at 8]. The First Circuit has held that "only momentary inattentiveness may be gross negligence in a place of great danger or while traveling at high speed." Peck, 862 F.2d at 5–6 (holding that gross negligence was an appropriate question for the jury where there was evidence that defendant was travelling at an excessive speed and was distracted for "at least several seconds").

These disputed facts are material to Plaintiff's claim for punitive damages and therefore summary judgment on this issue is inappropriate. See Cochran, 328 F.3d at 6 ("A fact is material

if its resolution might affect the outcome of the case under the controlling law.").  Accordingly, Defendants' motion for summary judgment on the issue of punitive damages [ECF No. 82] is DENIED.

C.     **Liability**

Plaintiff has moved for partial summary judgment on the issue of liability, based on the fact that Mr. Maldonado was convicted on charges of motor vehicle homicide by negligent operation.  [ECF No. 79 at 2].  His conviction was pursuant to a Massachusetts statute, which states that "whoever operates a motor vehicle negligently so that the lives or safety of the public might be endangered and by any such operation causes the death of another person, shall be guilty of homicide by a motor vehicle . . . ."  Mass. Gen. Laws ch. 90, § 24G(b).  Mr. Maldonado's conviction was affirmed by the Massachusetts Appeals Court on January 31, 2019.  Commonwealth v. Maldonado, 122 N.E.3d 1102 (Mass. App. Ct. 2019).  The Supreme Judicial Court denied further appellate review on May 9, 2019.  Commonwealth v. Maldonado, 123 N.E.3d 201 (Mass. 2019).

A party in a civil action may invoke collateral estoppel to preclude a criminal defendant from relitigating an issue that was decided in his criminal prosecution.  Fid. Mgmt. & Research Co. v. Ostrander, 662 N.E.2d 699, 703 (Mass. 1996) (citing Aetna Cas. & Sur. Co. v. Niziolek, 481 N.E.2d 1356 (1985)).  "To establish guilt under the motor vehicle homicide by negligent operation statute, the Commonwealth must prove '(1) operation of a motor vehicle, (2) upon a public way, (3) recklessly or negligently so as to endanger human life or safety, (4) thereby causing the death of a person.'"  Maldonado, 122 N.E.3d 1102 (quoting Commonwealth v. Angelo Todesca Corp., 842 N.E.2d 930 (Mass. 2006)).  Therefore, Mr. Maldonado's conviction establishes negligence and causation.  Id. ("In these circumstances, the jury could properly

conclude, beyond a reasonable doubt, . . . that the defendant was negligent." (internal citation and quotation marks omitted)); see Fid. Mgmt. & Research Co., 662 N.E.2d at 703.

Defendants did not oppose Plaintiff's motion for partial summary judgment on liability and stated in a May 30, 2019, filing that they had informed Plaintiff of their intention not to oppose the motion. [ECF No. 86 at 1 n.1]. Accordingly, Plaintiff's motion for partial summary judgment as to Defendants' liability, [ECF No. 78], is GRANTED.[4]

### D. Expert Opinion of Stephen Benanti

Plaintiff seeks to exclude Defendants' expert, Stephen Benanti, from relying on his use of a computer program called Interactive Driver Response Research ("I.DRR") to formulate his opinion as to whether the accident was avoidable. [ECF No. 77 at 7]. Plaintiff asserts that Mr. Benanti was "unable to cite any authority or publication that has tested or validated this program" and was also unable "to explain his choices of various data points he input into the program or the method by which the program arrived at the output data." [Id. at 2]. Defendants argue first that Mr. Benanti only used I.DRR to corroborate, not formulate, his opinion as to whether the accident was avoidable and, second, that expert opinions based on I.DRR results have been admitted in other courts. [ECF No. 91 at 2–3].

Federal Rule of Evidence 702 provides that a person who is qualified by knowledge, skill, experience, training, or education may testify in the form of an opinion if:

a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
b) the testimony is based on sufficient facts or data;

---

[4] Both parties refer to Plaintiff's motion as relating to the liability of both Defendants. [ECF No. 79 at 3 (asking the court to find that Mr. Maldonado's criminal conviction "establish[es] the liability of the defendants, Joseph Maldonado and M&M Produce"); ECF No. 86 at 1 n.1 (stating that Defendants "do not intend to file an opposition to the motion for partial summary judgment on the issue of the defendants' liability"). The Court therefore assumes the parties intended to concede both Mr. Maldonado's negligence (Count I) and M&M Produce's vicarious liability (Count VI).

c) the testimony is the product of reliable principles and methods; and
d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Rule "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993); see Seahorse Marine Supplies, Inc. v. P.R. Sun Oil Co., 295 F.3d 68, 80 (1st Cir. 2002) ("[T]he district court must perform a gatekeeping function by preliminarily assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue.'" (quoting Daubert, 509 U.S. at 592–93)).

Plaintiff's contentions are rooted in Rule 702(c) and (d), which require that the expert's opinion be the product of reliable principles and methods that the expert reliably applied to the facts of the case. See [ECF No. 77]; Fed. R. Evid. 702(c)–(d). The Supreme Court has provided a number of factors a court may consider when engaging in a reliability analysis under Daubert:

1) whether the scientific theory or technique can be (and has been) tested;
2) whether it has been subjected to peer review and publication;
3) whether it has a known rate of error;
4) whether there are standards controlling its application or operation; and
5) whether it is generally accepted in the relevant scientific community.

Carrozza v. CVS Pharmacy, Inc., 391 F. Supp. 3d 136, 144 (D. Mass. 2019) (citing Daubert, 509 U.S. at 593–94). The burden of proof as to the reliability of an expert's testimony falls on the party introducing the testimony. Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC, 752 F.3d 82, 96 (1st Cir. 2014).

Mr. Benanti did not reference the I.DRR software in his May 25, 2018, expert report, [ECF No. 83-2], or in his June 10, 2018, rebuttal report, [ECF No. 83-5]. He first discussed his use of the program during his September 19, 2018, deposition, when he indicated that he took a weeklong course on the software in late June 2018, [ECF no. 83-6 at 17], after he had submitted

his rebuttal report.  On September 26, 2018, Mr. Benanti submitted an addendum to his report that included the I.DRR results.  [ECF No. 83-7].  He testified regarding that addendum at a second deposition on November 26, 2018, [ECF No. 83-6 at 35].

The only discussion or explanation of the software in his addendum is contained within one paragraph: "Dr. Jeffrey Muttart of Crash Safety Solutions has designed a software program that can be used to determine a variety of variables dealing with Human Factors in motor vehicle collisions based on research studies. The program is call[ed] Interactive Driver Response Research (I.DRR)."  [ECF No. 83-7 at 6].  During his November 2018 deposition, Mr. Benanti was unable to describe how the program arrived at the results he provided in his addendum, beyond reciting that the software was designed by using 6,500 studies relating to "motor vehicle collisions and avoidance."  [ECF No. 83-6 at 60].

Mr. Benanti further testified that he was unaware of what types of calculations the program used, or what percentage of the 6,500 studies used to design the program were specific to the type of accident at issue in this case.  See, e.g., [id. at 57 ("Q: What are the mathematical calculations? A: I don't know.").  When asked about the variables he selected within the program, Mr. Benanti indicated that he used several default variables but was unable to explain why he chose those variables or why they were appropriate, beyond noting that they were the program's defaults.  [Id. at 63–66].[5]  Finally, Mr. Benanti was likewise unable to identify any published literature regarding the accuracy or reliability of the program.  [Id. at 59].

_____

[5] For example, Mr. Benanti used .006 as a variable in making his closing distance calculation using a formula he learned in the I.DRR course, but he was unable to explain why this variable was appropriate other than to state that he "was told [it] was the right one to use."  [ECF No. 83-6 at 72; ECF No. 83-7 at 7].  Mr. Benanti relied upon the calculation he achieved using this variable in determining that Mr. Maldonado "would have recognized that he was closing on the Sarno Ford when he was approximately 278 feet from impact."  [ECF No. 83-7 at 7, 11].

Defendants cite to several cases outside of the First Circuit to argue that the I.DRR program has been accepted by other courts. [ECF No. 91 at 5–7]. Those cases, however, are distinct. In Kozlov v. Associated Wholesale Grocers, Inc., the Eighth Circuit affirmed a lower court's decision to allow expert testimony that combined I.DRR analysis as well as the expert's independent calculations where, unlike here, the expert was able to "explain[] the scientific theory behind the software program." Kozlov v. Associated Wholesale Grocers, Inc., 818 F.3d 380, 394 (8th Cir. 2016). In Cantu v. United States, the court entered its findings after a bench trial, noting that it found the Government's expert more persuasive. Cantu v. United States, No. 14-00219, 2015 U.S. Dist. LEXIS 104056 (C.D. Cal. Aug. 7, 2015). The Government's expert used I.DRR and "independently validated [those results] by separate calculations, as well as physical evidence from [] the accident scene." Cantu, 2015 U.S. Dist. LEXIS 104056, at *37.[6]

In Doyle v. Steinmann, the Massachusetts Superior Court allowed an expert to testify where that expert had used, in part, I.DRR to identify a driver's perception-response time. Order on Mot. in Lim., Doyle v. Steinmann, No. 1684CV02509 (Mass. Super. Ct. Apr. 18, 2018). There, the expert combined his use of the I.DRR results with his own calculations to determine that the I.DRR results (an estimated 2.7 seconds response time) was consistent with his own results (between 2.5 to 3.5 seconds response time). Defendant's Expert Report, Doyle v. Steinmann, 2013 WL 12353956 (Mass. Super. Ct. Nov. 17, 2013) (No. 1684CV02509).

Unlike the cases cited above, Mr. Benanti did not use the I.DRR program to validate his calculations but used the program to recalculate and revise his initial calculations. In his first

---

[6] The court in Cantu also noted that "[t]he IDRR program incorporates decades of empirical, real-life research regarding drivers and their response times to various hazards and is widely accepted in the accident reconstruction community." Cantu, 2015 U.S. Dist. LEXIS 104056, at *28. It is unclear to the Court whether the judge in Cantu based this finding on evidence presented by the Government's expert through a report, deposition testimony, or testimony provided during the bench trial.

report from May 2018, Mr. Benanti estimated that Mr. Maldonado "had less than 6 seconds and approximately 380 feet to perceive, react, and avoid the Sarno Ford . . . ." [ECF No. 83-2 at 14]. In his addendum, in which he relied upon the I.DRR program, Mr. Benanti revised this estimate to 2.4 seconds of perception and reaction time and "approximately 354 feet to perceive, react, and stop." [ECF No. 83-7 at 11]. He used the 2.4 seconds provided by the I.DRR program to arrive at his calculation of 354 feet. [Id. at 4]. Rather than confirming his results with the I.DRR program as the experts in Kozlov, Cantu, and Doyle, Mr. Benanti revised his calculations entirely based on the results he obtained with the I.DRR program, despite not understanding how the program worked.

In assessing the Daubert factors for reliability—including whether the scientific theory or technique behind the I.DRR program can be (and has been) tested, whether the program has a known rate of error, and whether there are standards controlling its application or operation—the Court finds that Defendants have not established the reliability of the I.DRR program or Mr. Benanti's use of that program as applied to the facts in this case. Other than inapposite references to cases in other districts in which courts allowed testimony from experts who used the I.DRR program, Defendants have provided no other basis for the Court to assess the reliability of the program or Mr. Benanti's use of it. Plaintiff's motion to strike, [ECF No. 76] is therefore GRANTED in part and DENIED in part. The Court strikes those of Mr. Benanti's opinions or calculations that are based upon his use of the I.DRR program.

III.    CONCLUSION

For the reasons set forth herein, Plaintiff's motion for partial summary judgment as to liability, [ECF No. 78], is GRANTED. Plaintiff's motion for partial summary judgment as to comparative negligence, [ECF No. 74], is DENIED. Defendants' motion for partial summary

judgment as to punitive damages, [ECF No. 82], is <u>DENIED</u>. Plaintiff's motion to strike certain

opinions of Defendants' expert Stephen Benanti, [ECF No. 76], is <u>GRANTED</u> in part and

<u>DENIED</u> in part.

    **SO ORDERED.**

January 7, 2020                                 <u>/s/ Allison D. Burroughs</u>
                                                           ALLISON D. BURROUGHS
                                                           U.S. DISTRICT JUDGE